FILED
2012 Feb-21  PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

FILED

2012 FEB 21  A 11: 12

| | | |
|---|---|---|
| DANA ANDERSON, BELINDA BEVERLY, KATHY LACKEY and KARI WALKER, | ) ) ) ) | |
| Plaintiffs, | ) ) | **CIVIL ACTION NO.:** |
| v. | ) ) | CV-12-RRA-0598-S |
| SURGERY CENTER OF CULLMAN, INC.; SURGERY CENTER OF CULLMAN, LLC; SURGICAL CARE AFFILIATES, LLC and KEVIN JOHNSON, M.D., individually, | ) ) ) ) ) ) | **PLAINTIFFS DEMAND TRIAL BY STRUCK JURY** |
| Defendants. | ) ) | |

## COMPLAINT

### JURISDICTION AND VENUE

1.   This is a complaint for legal and equitable relief to redress violations by the Defendants of the Plaintiffs' rights secured by:

   a.   Title VII of the Civil Rights Act of 1964, as amended, 42

   U.S.C. § 2000e, et seq.; and

   b.   the laws of the State of Alabama.

2.     Federal subject matter jurisdiction exists pursuant to:

a.     28 U.S.C. §§ 1331, 1367; and

b.     Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. §2000e, et seq.;

**PARTIES**

3.     The Plaintiffs, Dana Anderson, Belinda Beverly, Kathy Lackey and

Kari Walker bring this legal action for illegal employment practices against

Surgery Center of Cullman, Inc.; Surgery Center of Cullman, LLC; Surgical Care

Affiliates, LLC and Kevin Johnson, MD.  Dr. Kevin Johnson sexually harassed the

Plaintiffs and created a sexually charged and gender discriminatory hostile

environment at Defendants' business.  Plaintiffs seek to permanently enjoin all

Defendants from creating and condoning an illegal workplace that is hostile,

derogatory and discriminatory to female employees and in particular nurses who

work directly for and with Defendant Johnson.  Plaintiffs set out more fully each

claim below.

4.     Plaintiff, Dana Anderson, ("Anderson" and/or "Plaintiff"), is a

resident of Cullman County, Alabama, and is over the age of nineteen.  Anderson

was employed by Surgery Center of Cullman ("Surgery Center" and/or

2

"Defendant"), in Cullman, Alabama, whose corporate office is in Jefferson

County, Alabama, when the actions of which she complains took place.

5.     Plaintiff, Belinda Beverly, ("Beverly" and/or "Plaintiff"), is a resident

of Cullman County, Alabama, and is over the age of nineteen. Beverly was

employed by Surgery Center of Cullman ("Surgery Center" and/or "Defendant"),

in Cullman, Alabama, whose corporate office is in Jefferson County, Alabama,

when the actions of which she complains took place and was forced to terminate

her employment after voicing complaints of sexual harassment.

6.     Plaintiff, Kathy Lackey, ("Lackey" and/or "Plaintiff"), is a resident of

Cullman County, Alabama, and is over the age of nineteen. Lackey was employed

by Surgery Center of Cullman ("Surgery Center" and/or "Defendant"), in Cullman,

Alabama, whose corporate office is in Jefferson County, Alabama, when the

actions of which she complains took place. Lackey was also forced to terminate

her employment after complaining to Defendant about Johnson's illegal actions in

the workplace.

7.     Plaintiff, Kari N. Walker ("Walker" and/or "Plaintiff"), is a resident

of Cullman County, Alabama, and is over the age of nineteen. Walker was

employed by Surgery Center of Cullman ("Surgery Center" and/or "Defendant"),

in Cullman, Alabama, whose corporate office is in Jefferson County, Alabama,

3

when the actions of which she complains took place. Walker was forced to
terminate her employment after complaining internally and to the EEOC about Dr.
Johnson.

8.      Defendant, Surgery Center of Cullman, Inc., is a corporation
organized pursuant to the laws of the State of Delaware. At all times relevant to
this Complaint, Surgery Center of Cullman, Inc. was doing business in Jefferson
County, Alabama. Defendant employs at least fifteen (15) persons within the
meaning of Title VII, 42 U.S.C. § 2000e(b).

9.      Defendant, Surgery Center of Cullman, LLC, is a limited liability
company organized pursuant to the laws of the State of Alabama. At all times
relevant to this Complaint, Surgery Center of Cullman, Inc. was doing business in
Jefferson County, Alabama. Defendant employs at least fifteen (15) persons
within the meaning of Title VII, 42 U.S.C. § 2000e(b).

10.     Defendant, Surgical Care Affiliates, LLC, is a limited liability
company organized pursuant to the laws of the State of Delaware. At all times
relevant to this Complaint, Surgery Center of Cullman, Inc. was doing business in
Jefferson County, Alabama. Defendant employs at least fifteen (15) persons
within the meaning of Title VII, 42 U.S.C. § 2000e(b)

4

11.    Defendant, Kevin Johnson, M.D. ("Johnson"), at all times relevant, was a physician of Defendants, a resident of Cullman County, Alabama, and is subject to the jurisdiction of this Court. Dr. Johnson has a previous history of sexually harassing female employees that was known by Defendants and further condoned in the workplace to the detriment of Plaintiffs and all female employees.

## NATURE OF ACTION

12.    Plaintiffs bring this action against Surgery Center of Cullman, Inc., Surgery Center of Cullman, LLC, Surgical Care Affiliates, LLC and Kevin Johnson, M.D., (hereinafter collectively "Defendants"), for unlawful employment practices and acts of intentional gender discrimination, sexual harassment (quid pro quo and hostile environment) and retaliation that occurred during their employment with Defendants. This lawsuit also alleges state law claims of invasion of privacy, assault and battery, intentional infliction of emotional distress and wanton and negligent hiring, training, supervision and retention under Alabama law. Jurisdiction over Plaintiffs' claims, based on Alabama law, exists under the doctrine of supplemental jurisdiction, 28 U.S.C. §1367.

13.    Plaintiffs seek injunctive relief, compensatory and punitive damages, to which they are entitled, and attorneys' fees and costs.

## ADMINISTRATIVE PROCEDURES

14. (a) Plaintiff, Dana Anderson, on February 24, 2011, within 180 days of learning of the acts of discrimination of which she complains, filed a Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC"). **(Attached herein as Exhibit A).** Plaintiff, Anderson, received a Notice of "Right to Sue" from the EEOC, dated November 29, 2011, with regard to her charge of discrimination, entitling her to institute a civil action in federal district court. **(Attached as Exhibit B).**

(b) Plaintiff, Belinda Beverly, on February 24, 2011, within 180 days of learning of the acts of discrimination of which she complains, filed a Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC"). **(Attached herein as Exhibit C).** Plaintiff, Beverly, received a Notice of "Right to Sue" from the EEOC, dated November 29, 2011, with regard to her charge of discrimination, entitling her to institute a civil action in federal district court. **(Attached as Exhibit D).**

(c) Plaintiff, Kathy Lackey, on February 24, 2011, within 180 days of learning of the acts of discrimination of which she complains, filed a Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC"). **(Attached herein as Exhibit E).** Plaintiff, Lackey, received a Notice of "Right

6

to Sue" from the EEOC, dated November 29, 2011, with regard to her charge of

discrimination, entitling her to institute a civil action in federal district court.

**(Attached as Exhibit F).**

(d) Plaintiff, Kari Walker, on February 24, 2011, within 180 days

of learning of the acts of discrimination of which she complains, filed a Charge of

Discrimination with the Equal Employment Opportunity Commission, ("EEOC").

**(Attached herein as Exhibit G).** Plaintiff, Walker, received a Notice of "Right

to Sue" from the EEOC, dated November 29, 2011, with regard to her charge of

discrimination, entitling her to institute a civil action in federal district court.

**(Attached as Exhibit H).**

15. All prerequisites for bringing this action have been met by all the

Plaintiffs.

## STATEMENT OF FACTS

### Dana Anderson

16. Dana Anderson has been a nurse for over 20 years and became

employed with Defendants since its opening the Cullman facility on or about

November 17, 2006.

17. Anderson, along with co-Plaintiffs, Beverly, Lackey and Walker, was

sexually harassed by Dr. Kevin Johnson, the Medical Director and part owner of

7

Defendants' facility in Cullman. Further, Anderson has been subjected to an ongoing hostile environment and retaliation on the basis of her gender and her complaints of sexual harassment. Johnson has touched the Plaintiff against her will, made sexual and improper comments, jokes and innuendos that were unwelcomed by Anderson.

18.     Since voicing her complaints of physical assault, sexual harassment and gender discrimination about Dr. Johnson, Anderson has been caused to suffer ongoing retaliation and threats made to her about her personal safety and her continued employment. Co-Plaintiffs, Beverly, Lackey and Walker have also been harassed and have further voiced complaints of sexual harassment to the administrator, Lori Bates, Facility Administrator; Connie Crook, Director of Nursing; and Lynn Hammick, Human Resource Investigator.

19.     In the early part of 2010, Anderson, along with many other female employees, complained about Dr. Kevin Johnson's continued physical assault and sexual harassment of female employees to the human resource department of Defendant. The Plaintiffs and other female employees were interviewed by a corporate Human Resource investigator, Ms. Lynn Hammack. Even though some of the discrete acts of sexual harassment by Dr. Johnson to each Plaintiff were witnessed by other employees, Dr. Greg Windham, CEO, announced that all

8

accusations of sexual harassment came down to "he said, she said" and that nothing had been proven. Complainants were not made aware of any action taken after that investigation and Dr. Johnson remained as the Medical Director of the facility.

20. As a result of Dr. Windham's findings, no disciplinary action was recommended nor taken by the corporate office against Johnson. Dr. Windham also announced that the issue would never be revisited and had no bearing on current charges against Johnson.

21. This finding empowered Johnson to become even more emboldened in his sexual harassment and even bragged that although one female employee "took notes" about his workplace behavior, "it didn't do her a damn bit of good." Johnson further bragged that it would do no good to complain about him, that the company would protect him since he made the facility money and nurses were "a dime a dozen." Johnson threatened that he owned the facility and that if anyone challenged him, they would live to regret it. Johnson conveyed he was untouchable and the other doctors would have his back and that nothing could be done to stop him. These statements and others continued to be made by Johnson and escalated a hostile and fearful work environment for Anderson and the other Plaintiffs.

9

22.    The fearful and hostile work environment was not only reinforced by Dr. Johnson's comments, but also by his actions, such as his bringing his personal firearms into the surgery facility on more than one occasion which was against safety and facility policies. Numerous employees witnessed Johnson's firearms in the facility after Plaintiffs' complaints.

23.    In January 2011, additional and new charges of sexual harassment were reported to Tom Gill, Vice President of Operations, Dr. Greg Windham, CEO, Lori Bates, Facility Administrator, Connie Crook, Director of Nursing, and Lynn Hammick of the Human Resources Manager. Another investigation was conducted and again, Johnson was neither reprimanded, nor counseled, nor trained to refrain from sexual harassing female employees.

24.    The Plaintiffs' complaint in January 2011 involved Dr. Johnson referring to women using slang and degrading names; inappropriate comments and touching; viewing, distributing and watching pornography in the work place on his laptop during work hours in front of female employees, including Anderson and Laura Ruehl, Purchasing Manager; Johnson disseminating vulgar and inappropriate pictures of his ex-girlfriends and a female patient while under anesthesia during surgery; drawing vulgar pictures on the PACU calendar at female employees' desks; and writing sexually graphic comments. Female

10

employees have repeatedly asked Dr. Johnson to cease these activities, but he has persisted, and in retaliation became increasingly more profane and hostile in his behavior.

25. Dr. Johnson also would refer to Anderson and Lackey as lesbians. Additionally, on one occasion when Lackey needed assistance catheterizing a male patient, for several days later, when Lackey would call him, Dr. Johnson would answer and joke about the situation, stating "I won't handle any more dicks for you, you need to learn how to handle them yourself." He further stated to Lackey, "You should get some pointers from Anderson because she knows how to handle them well."

26. Dr. Johnson has made other degrading, sexually charged and demeaning comments and jokes in the workplace that are hostile to female employees. Anderson has further witnessed Johnson grabbing, groping and touching female employees in a sexual manner. Anderson has been made to feel terrorized in the work place by Johnson and his continual harassment, intimidation and threats to Plaintiffs and other female employees.

27. Dr. Johnson has physically assaulted Anderson on numerous occasions by choking her, pulling her hair, kissing her against her will, kicking her and threatening her in the workplace, all in front of other employees. These

11

actions have occurred over a period of time, and were painful, hurtful, physically and emotionally degrading and abusive, and have created a hostile and fearful workplace for Anderson and other female employees.

28.     Anderson has been and continues to be subjected to ongoing and repeated sexual harassment, gender discrimination and retaliation. Further, other female employees are being subjected to the same or similar treatment with full knowledge by Defendants who have condoned and ratified Johnson's harassment.

29.     Further, as a result of the prior sexual harassment, and continuing and ongoing harassment in retaliation for her complaints, Anderson has experienced loss of pay and benefits, severe anxiety attacks, stress, depression, loss of sleep, mental and physical anguish, different terms and conditions of employment, and has become physically ill due to Dr. Johnson's workplace harassment and retaliation. Anderson has been forced to seek medical care and counseling and has sought FMLA leave to attempt to cope and recover. Anderson has lost pay and benefits and the terms and conditions of her employment have been changed and made more difficult as a result of retaliatory efforts to force Anderson from employment or make her working conditions so intolerable she would be forced to resign.

30.     Anderson's work conditions have deteriorated and have become increasingly unbearable.

## **Belinda Beverly**

31.     Belinda Beverly has been a nurse for over six (6) years and became employed with Defendants on or about March of 2010.

32.     Beverly, along with co-Plaintiffs, Anderson, Lackey and Walker, was sexually harassed by Dr. Kevin G. Johnson.  Further, Beverly was subjected to an ongoing hostile environment on the basis of her gender.

33.     Since voicing her complaints of physical assault, sexual harassment and gender discrimination by Dr. Johnson, Beverly was caused to suffer ongoing retaliation and threats made to her about her personal safety and her continued employment.  Co-Plaintiffs, Anderson, Lackey and Walker have also been harassed and have further voiced complaints of sexual harassment to the administrator, Lori Bates, Facility Administrator; Connie Crook, Director of Nursing; and Lynn Hammick, Human Resource Investigator.

34.     In the early part of 2010, Beverly, along with many other female employees, complained about Dr. Kevin Johnson's continued physical assault and sexual harassment of female employees to the human resource department of Defendant.  The Plaintiffs and other female employees were interviewed by a

13

corporate Human Resource investigator, Ms. Lynn Hammack. Even though some
of the discrete acts of sexual harassment by Dr. Johnson to each Plaintiff were
witnessed by other employees, Dr. Greg Windham, CEO, announced that all
accusations of sexual harassment came down to "he said, she said" and that
nothing had been proven. Complainants were not made aware of any action taken
after that investigation and Dr. Johnson remained as the Medical Director of the
facility.

35.     As a result of Dr. Windham's findings, no disciplinary action was
recommended nor taken by the corporate office against Johnson. Dr. Windham
also announced that the issue would never be revisited and had no bearing on
current charges against Johnson.

36.     This finding empowered Johnson to become even more emboldened
in his sexual harassment and even bragged that although one female employee
"took notes" about his workplace behavior, "it didn't do her a damn bit of good."
Johnson further boasted that it would do no good to complain about him, that the
company would protect him since he made the facility money and nurses were "a
dime a dozen." Johnson threatened that he owned the facility and that if anyone
challenged him, they would live to regret it. Johnson conveyed he was
untouchable and the other doctors would have his back and that nothing could be

14

done to stop him. These statements and others continued to be made by Johnson and escalated a hostile and fearful work environment for Anderson and the other Plaintiffs.

37.   The fearful and hostile work environment was not only reinforced by Dr. Johnson's comments, but also by his actions, such as his bringing his personal firearms into the surgery facility on more than one occasion, against all safety and facility policies. Numerous employees witnessed Johnson's firearms in the facility after Plaintiffs' complaints of sexual harassment. Johnson continued with his threats that he "could do anything he wanted."

38.   In January 2011, additional and new charges of sexual harassment were reported to Tom Gill, Vice President of Operations, Dr. Greg Windham, CEO, Lori Bates, Facility Administrator, Connie Crook, Director of Nursing, and Lynn Hammick of the Human Resources Manager. Another investigation was conducted and again, Johnson was neither reprimanded, nor counseled, nor trained, nor made to refrain from sexual harassing female employees.

39.   The Plaintiffs' complaint in January 2011 involved Dr. Johnson referring to women using slang and degrading names; inappropriate comments and touching; viewing, distributing and watching pornography in the work place on his laptop during work hours; Johnson disseminating vulgar and inappropriate

15

pictures of his ex-girlfriends and a female patient while under anesthesia during surgery; drawing vulgar pictures on the PACU calendar at female employees' desks; and writing sexually graphic comments. Female employees have repeatedly asked Dr. Johnson to cease these activities, but he has persisted, and in response has been increasingly profane and hostile in his behavior.

40.     Dr. Johnson has made other degrading, sexually charged and demeaning comments and jokes in the workplace that are hostile to female employees. Beverly has witnessed Johnson grabbing and touching employees in a sexual manner and has become fearful in the work place by Johnson's comments and actions that continually harass, intimidate and threaten Beverly and other female employees.

41.     Dr. Johnson has physically assaulted Beverly on numerous occasions by touching her without her permission or consent, hugging her, physically grabbing her, pulling her body into his body and grabbing her buttocks while making sexual comments. These actions were painful, degrading and abusive and without permission or consent of Beverly.

42.     Beverly was subjected to ongoing and repeated sexual harassment and gender discrimination. Further, other female employees are being subjected to the same treatment.

16

43.     After complaining about Johnson and the discrimination and harassing environment, Beverly was subjected to ongoing alienation by staff members, slander conducted by Dr. Johnson's assistant, Beth Pitmon, and being scolded, threatened and demeaned by Connie Crook, Director of Nursing, and Lori Bates, Administrator.  Beverly, under threat that her nursing license would be adversely affected, as well as continued damage to her emotional well-being, was forced to terminate her employment with Defendant on March 17, 2011.

44.     During the two weeks leading up to Beverly's constructive discharge, she was pulled away from patient care by Connie Crook.  During this time, Beverly was threatened and told that her complaints of sexual harassment could shut the doors to the facility and cause everyone to lose their jobs.  Crook went on to further ask Beverly if she could live with that guilt and demanded that Beverly drop her EEOC complaint and do what she and everyone else have learned to do, over the years, just ignore Dr. Johnson.

45.     A few days later, when Beverly informed Crook that she was not dropping her complaint, Crook verbally and openly expressed her displeasure and dissatisfaction with Beverly and retaliated by having Beverly written up over false accusations.  Beverly refused to sign the bogus disciplinary form which would

17

have affected Beverly's nursing license. Prior to this act of retaliation, Beverly had never been written up before.

46.    Beverly was then taken off patient care by Lori Bates, Administrator. Bates also requested that Beverly drop her EEOC complaint and ignore Dr. Johnson. Bates admitted that Dr. Johnson was saying and doing inappropriate things to her, but she chose to ignore him and not complain. Bates continued to ignore him. Bates stated to Beverly that Dr. Johnson was who he was, and that he was not going to change; that he owned half the facility, and that if Beverly pursued this complaint, he would dig up every skeleton in her closet and expose it.

47.    Bates further admitted to Beverly that she, too, was afraid of Dr. Johnson and informed Beverly that if she pursued the complaint, Dr. Johnson would make sure that Beverly would be "blackballed" from ever working as a nurse in Cullman. Bates told Beverly that the Surgery Center pays their employees more than any other health care facility in Cullman and Beverly could never make as much money anywhere else in Cullman. Bates further stated that Beverly's complaints were going to affect Dr. Johnson's family and they should not be punished because they had not done anything wrong.

48.    Bates informed Beverly that her complaints could possibly cause her to lose her job.

18

49.     After Beverly's complaints, Beth Pitmon, Dr. Johnson's personal

assistant, constantly caused patient and practice issues in the PACU department.

Pitmon would take employees aside in front of Anderson and Beverly to discuss

their complaints of sexual harassment; Pitmon would defame Beverly, Anderson

and the other Plaintiffs and intentionally create a hostile work environment in

retaliation of the Plaintiffs' complaint.

50.     After weeks of working in a hostile and retaliatory environment,

Beverly became ill from stress and was forced out of her employment, without

having another full-time job opportunity.  Beverly was subjected to ongoing

financial duress and emotional and physical stress.

51.     Further, Beverly became physically ill, experienced loss of pay and

benefits, anxiety attacks, depression and loss of sleep, mental and physical anguish

caused by stress brought on by Dr. Johnson's workplace, sexual harassment and

retaliation.  Further, Beverly has suffered loss of wages and different terms and

conditions of employment, including benefits and pay.

## Kathy Lackey

52.     Kathy Lackey has been a nurse for over 21 years and became

employed with Defendants on or about June 4, 2010.

19

53.    Lackey, along with co-Plaintiffs, Anderson, Beverly and Walker, was sexually harassed by Dr. Kevin Johnson, the Medical Director and part owner of Defendants. Further, Lackey was subjected to an ongoing hostile environment on the basis of her gender and in retaliation for her complaints.

54.    Since voicing her complaints of physical assault, sexual harassment and gender discrimination about Dr. Johnson, Lackey was caused to suffer ongoing retaliation and threats made to her about her personal safety and her continued employment. Co-Plaintiffs, Anderson, Beverly and Walker have also been harassed and have further voiced complaints of sexual harassment to the administrator, Lori Bates, Facility Administrator; Connie Crook, Director of Nursing; and Lynn Hammick, Human Resource Investigator.

55.    In the early part of 2010, Lackey, along with many other female employees, complained about Dr. Kevin Johnson's continued physical assault and sexual harassment of female employees to the human resource department of Defendant. The Plaintiffs and other female employees were interviewed by a corporate Human Resource investigator, Ms. Lynn Hammack. Even though some of the discrete acts of sexual harassment by Dr. Johnson to each Plaintiff were witnessed by other employees, Dr. Greg Windham, CEO, announced that all accusations of sexual harassment came down to "he said, she said" and that

20

nothing had been proven. Complainants were not made aware of any action taken after that investigation and Dr. Johnson remained as the Medical Director of the facility.

56.     As a result of Dr. Windham's findings, no disciplinary action was recommended nor taken by the corporate office against Johnson. Dr. Windham also announced that the issue would never be revisited and had no bearing on current charges against Johnson.

57.     This finding empowered Johnson to become even more emboldened in his sexual harassment and even bragged that although one employee "took notes" about his workplace behavior, "it didn't do her a damn bit of good." Johnson further bragged that it would do no good to complain about him, that the company would protect him since he made the facility money and nurses were "a dime a dozen." Johnson threatened that he owned the facility and that if anyone challenged him, they would live to regret it. Johnson conveyed he was untouchable and the other doctors would have his back and that nothing could be done to stop him. These statements and others continued to be made by Johnson and escalated a hostile and fearful work environment for Lackey and the other Plaintiffs.

21

58.     The fearful and hostile work environment was not only reinforced by

Dr. Johnson's comments, but also by his actions, such as his bringing his personal

firearms into the surgery facility on more than one occasion, against safety and

facility policies.  Numerous employees witnessed Johnson's firearms in the facility

after Plaintiffs' complaints.

59.     In January 2011, additional and new charges of sexual harassment

were reported to Tom Gill, Vice President of Operations, Dr. Greg Windham,

CEO, Lori Bates, Facility Administrator, Connie Crook, Director of Nursing, and

Lynn Hammick of the Human Resources Manager.  Another investigation was

conducted and again, Johnson was neither reprimanded, nor counseled, nor trained

to refrain from sexual harassing female employees.

60.     The Plaintiffs' complaint in January 2011 involved Dr. Johnson

referring to women using slang and degrading names; inappropriate touching and

comments; viewing, distributing and watching pornography in the work place on

his laptop during work hours in front of female employees; portraying and

disseminating vulgar and inappropriate pictures of his ex-girlfriends and a female

patient while under anesthesia during surgery; drawing vulgar pictures on the

PACU calendar at female employees' desks; writing sexually graphic comments.

Female employees have repeatedly asked Dr. Johnson to cease these activities, but

22

he has persisted, and in response has been increasingly more profane and hostile in his behavior.

61. Dr. Johnson regularly refers to women using slang words and degrading names. Dr. Johnson also would refer to Lackey and Anderson as lesbians. For several days after Lackey needed assistance catheterizing a male patient, Dr. Johnson would comment to Lackey and in front of others, that, "I won't handle any more dicks for you, you need to learn how to handle them yourself." He further stated, "You should get some pointers from Anderson because she knows how to handle them well."

62. Dr. Johnson has further made degrading, sexually charged and demeaning comments and jokes in the workplace which would also involve Johnson grabbing and touching employees in a sexual manner. Lackey was made to feel terrorized and fearful in the work place by Johnson's continued harassment, intimidation and threats to Plaintiffs and other female employees. These actions of Johnson created a sexually hostile and gender degrading work environment for Plaintiffs and other female employees.

63. Dr. Johnson has physically assaulted Lackey on numerous occasions while making sexual comments. As a point of illustration, on one occasion when Lackey and her co-workers wore Auburn attire that consisted of a pinned on tiger

23

tail, Dr. Johnson approached Lackey from behind, pulled the tail and whispered in her ear, "I just couldn't leave today without saying I got some tail from Lackey." These actions and comments were numerous and further degrading and abusive.

64.     Lackey was subjected to ongoing and repeated sexual harassment and gender discrimination that was condoned and ratified by all Defendants. Johnson's actions were open and obvious to Plaintiffs, managers and owners, but nothing was done to prevent his sexual and perverted actions from harming Plaintiffs and other female employees. Further, other female employee's were and are being subjected to the same and similar treatment.

65.     On February 25, 2011, Lackey turned in her verbal resignation to Connie Crook after Dr. Johnson's continued and repeated harassment and retaliation after numerous and repeated complaints. On February 28, 2011, Lackey attempted to turn in her written notice to Tom Gill and Lori Bates. Gill refused Lackey's resignation asking her to hold on a little longer and wait for a resolution. On March 11, 2011, after no resolution was forthcoming or any communication from Gill, Lackey resigned from the company due to the continued and repeated harassment, discrimination and retaliation.

66.     Further, as a result of the harassment, hostile environment, discrimination and retaliation, Lackey has experienced loss of pay and benefits,

24

anxiety attacks, stomach pains, and loss of sleep, mental and physical anguish, different terms and conditions of employment, including benefits and pay.

### Kari N. Walker

67.    Kari N. Walker has been a nurse for over 18 years and has been employed with Defendants since its opening in November 17, 2006.

68.    Walker, along with co-Plaintiffs, Anderson, Beverly and Lackey, was sexually harassed by Dr. Kevin Johnson, the Medical Director and part owner of Defendants. Further, Walker was subjected to an ongoing hostile environment on the basis of her gender.

69.    Since voicing her complaints of physical assault, sexual harassment and gender discrimination by Dr. Johnson, Walker was caused to suffer ongoing retaliation and threats made to her about her personal safety and her continued employment. Co-Plaintiffs, Anderson, Lackey and Beverly have also been harassed and have further voiced complaints of sexual harassment to the administrator, Lori Bates, Facility Administrator; Connie Crook, Director of Nursing; and Lynn Hammick, Human Resource Investigator.

70.    In the early part of 2010, Walker and Anderson, along with many other female employees, complained about Dr. Kevin Johnson's continued physical assault and sexual harassment of female employees to the human resource

25

department of Defendant. The Plaintiffs and other female employees were interviewed by a corporate Human Resource investigator, Ms. Lynn Hammack. Even though some of the discrete acts of sexual harassment by Dr. Johnson were witnessed by other employees, Dr. Greg Windham, CEO, announced that all accusations of sexual harassment came down to "he said, she said" and that nothing had been proven. Complainants were not made aware of any action taken after that investigation and Dr. Johnson remained as the Medical Director of the facility.

71. As a result of Dr. Windham's findings, no disciplinary action was recommended nor taken by the corporate office against Johnson. Dr. Windham also announced that the issue would never be revisited and had no bearing on current charges against Johnson.

72. This finding empowered Johnson to become even more emboldened in his sexual harassment and even bragged that although one female employee "took notes" about his perverted behavior, "it didn't do her a damn bit of good." Johnson further bragged that it would do no good to complain about him, that the company would protect him since he made the facility money and nurses were "a dime a dozen." Johnson threatened that he owned the facility and that if anyone challenged him, they would live to regret it. Johnson conveyed he was

26

untouchable and the other doctors would have his back and that nothing could be done to stop him. These statements and others continued to be made by Johnson and escalated a hostile and fearful work environment for Walker and the other Plaintiffs.

73.    The fearful and hostile work environment was not only reinforced by Dr. Johnson's comments, but also by his actions, such as his bringing his personal firearms into the surgery facility on more than one occasion and against all safety and facility policies. Numerous employees witnessed his firearms in the facility after Plaintiffs' complaints.

74.    In January 2011, additional and new charges of sexual harassment were reported to Tom Gill, Vice President of Operations, Dr. Greg Windham, CEO, Lori Bates, Facility Administrator, Connie Crook, Director of Nursing, and Lynn Hammick of the Human Resources Manager. Another investigation was conducted and again, Johnson was neither reprimanded, nor counseled, nor trained to refrain from sexual harassing female employees.

75.    The Plaintiffs' complaint in January 2011 involved Dr. Johnson referring to women using slang and degrading names; inappropriate comments and touching; viewing, distributing and watching pornography in the work place on his laptop during work hours and in front of female employees; portraying and

27

disseminating vulgar and inappropriate pictures of his ex-girlfriends and of Walker while under anesthesia as a patient during surgery; Johnson would make vulgar comments about female patients' anatomy during surgery; he would draw vulgar pictures on the PACU calendar at female employees' desks; and write sexually graphic comments. Female employees have repeatedly asked Dr. Johnson to cease these activities, but he has persisted, and in response has grown increasingly more profane and hostile in his behavior.

76. Dr. Johnson regularly refers to women using slang words and degrading names; he has taken photographs of Walker during surgery and shown these photographs to employees that were not involved in her care or having any reason to be shown these photographs. In some of these photographs, Walker was unclothed and appeared to be sedated. Female employees have repeatedly asked Dr. Johnson to cease these activities, but he has persisted, and in response has increased his profane and hostile behavior.

77. Dr. Johnson makes degrading, sexually charged and demeaning comments and jokes in the workplace. Walker has witnessed Johnson grabbing, groping and touching she and other female employees in a sexual manner. Walker was made to feel terrorized in the work place by Johnson due to the continual

28

sexual harassment, intimidation, threats and retaliation of Walker and other female employees.

78.    Walker was subjected to frequent, ongoing and repeated sexual harassment and gender discrimination. Further, other female employee's are being subjected to the same treatment.

79.    After reporting Dr. Johnson in February 2010, Walker experienced ongoing retaliation in the workplace for her complaints and was forced to turn in her resignation in February 2011 due to continued harassment and retaliation after a meeting with Lori Bates, Administrator. Bates told Walker that Dr. Johnson would never change and Walker should either deal with the harassment or leave. In that meeting, Walker was offered therapy to deal with the harassment, was told she needed to change her "medication," or a move to another position in another facility would be found for her.

80.    Due to Dr. Johnson's threats stating, "If anyone goes against me, they will live to regret it," Walker feared for her personal safety, as well as the safety of her family. As a result, she was forced to terminate her employment. Due to the ongoing threats, adverse terms and conditions of employment, retaliation and constructive discharge, Walker was caused to lose wages and benefits. Walker was cause to undue emotional and physical pain.

29

81.     Further, Walker has become physically ill, experienced anxiety attacks, stomach pains, and loss of sleep caused by stress brought on by Dr. Johnson's workplace harassment and retaliation and has suffered loss of wages and different terms and conditions of employment, including benefits and pay.

## COUNT ONE

### SEXUAL HARASSMENT
### QUID PRO QUO AND HOSTILE ENVIRONMENT

82.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 81 with the same force and effect as if fully set out in specific detail herein below.

83.     This is a claim against all Defendants except Dr. Johnson, in his personal capacity[1] arising under Title VII of the Civil Rights Act of 1964, as amended, prohibiting sexual harassment in the workplace.

84.     The conduct of the Defendants alleged herein violates Title VII because Plaintiffs were required to work in a sexually hostile environment which was tainted by impermissible  and repeated requests for sexual favors and innuendos and a perverse hostile environment based on sex, which included Plaintiffs being subjected to repeated sexual harassment, touching, comments,

---

[1] Because Title VII does not create a cause of action against individual Defendants, Johnson is not included as a Defendant in the Title VII claims.  However, Johnson is a manager and owner of Defendants and is sued in this capacity under Title VII.

30

threats, and intimidation over an extended period of time by Defendant, Kevin Johnson, M.D., the Medical Director and part owner.

85.    Plaintiffs are female and members of a protected group.

86.    Plaintiffs did not welcome the sexual invitations, misconduct and hostile work environment  created by Defendant Johnson and Surgery Center of Cullman and its affiliates.

87.    Defendants subjected the Plaintiffs to repeated sexual harassment and intimidation causing the Plaintiffs' work environment to be permeated with discriminatory conduct, ridicule, and insult that altered their work conditions, pay and benefits.

88.    Defendants touched and/or allowed and condoned the unlawful treatment of the Plaintiff which included inappropriate touching and comments that were unwelcome.  Defendants made and/or condoned inappropriate and sexual comments to the Plaintiffs.  The conduct and comments continued on a daily basis and many times throughout the work day.  Defendants regularly referred to women using slang words and degrading names; pornography has been viewed, distributed and watched by Defendants in the workplace; Defendants have allowed and/or condoned Johnson showing inappropriate pictures of his ex-girlfriends and a female patient during or after surgery.  The female patient was

31

co-Plaintiff, Walker, and in some of these photos Walker was unclothed and appeared to be sedated. Dr. Johnson has drawn vulgar pictures on the PACU calendar at female employees' desks and has written graphic comments. Defendant has allowed an/or condoned these actions.

89.     Defendant Johnson made degrading, sexually charged and demeaning comments and jokes to and in front of female employees. Plaintiffs have witnessed Defendant Johnson grabbing and touching them and other female employees in a sexual manner. Plaintiffs were made to feel terrorized in the work place by Johnson's continual harassment, intimidation and threats to the Plaintiffs and other female employees. Defendant Johnson further stated that it would do no good to complain about him, that the company would protect him. Defendant Johnson stated that he is untouchable and the doctors and other owners would have his back and that nothing could be done to stop him. Defendant Johnson further made the statement that if anyone challenged him, they would live to regret it. Plaintiffs were forced to endure the sexual harassment in exchange for their job, benefits and continued employment.

90.     Defendant Johnson has physically assaulted Anderson by choking her, pulling her hair, pushing her and threatening her in the workplace. Johnson has physically assaulted Beverly by touching her, hugging her, physically

32

grabbing her and pulling her body into his body while making sexual comments. Johnson has physically assaulted Lackey by touching her, hugging her, physically grabbing her and pulling her body into his body while making sexual comments. Further, Johnson has physically assaulted Walker by touching her, hugging her, physically grabbing her, pulling her body into his body and grabbing her buttocks while making sexual comments. These actions were degrading and abusive to all Plaintiffs. At all times, Plaintiffs repeatedly told Johnson to leave them alone, but to no avail. Defendants condoned and ratified these actions and others by Johnson.

91.    Despite Plaintiffs' repeated and numerous complaints, Johnson's harassment continued and Plaintiffs continued to suffer outrageous harassment, discrimination and retaliation. Further, previous female employees have also complained about Johnson and the company has failed to discipline or remove Johnson to protect its female work force. Nothing was ever done to train, correct or discipline Johnson nor to prevent his sexually harassing conduct and language toward other women. Rather, Johnson remained undeterred in a management position and part owner in the company.

92.     Such unlawful employment practices proximately caused Plaintiffs to suffer severe emotional distress, mental anguish, embarrassment, humiliation, shame and trauma for which they claim damages.

93.     Due to the ongoing threats, adverse terms and conditions of employment, retaliation and constructive discharge, Plaintiffs were was caused to lose wages and benefits. Plaintiffs were also subjected to undue emotional and physical pain.

94.     Plaintiffs seek declaratory and injunctive relief, reinstatement where applicable, award of compensatory and punitive damages, mental anguish, costs, attorney's fees, and any and all such other relief the trier of fact may assess.

## COUNT TWO

## GENDER DISCRIMINATION

95.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 94 with the same force and effect as if fully set out in specific detail herein below.

96.     Plaintiffs have been discriminated against on the basis of their sex in regard to training, promotion, job assignments, job pay and terms and conditions of employment, in violation of Title VII, 42 U.S.C. §2000e, et seq.. The Plaintiffs have been discriminated and harassed because of their sex and have been subjected to unequal treatment. Further, the Plaintiffs have been subjected to a

34

hostile environment because of their gender.  Female employees are exploited due to their gender.  Male employees are not similarly treated.

97.    Such unlawful employment practices proximately caused Plaintiffs to suffer severe emotional distress, mental anguish, embarrassment, humiliation, shame and trauma for which they claim damages.

98.    Plaintiffs seek declaratory and injunctive relief, reinstatement where applicable, award of back pay, compensatory and punitive damages, mental anguish, costs, attorney's fees, and any and all such other relief the trier of fact may assess.

## COUNT THREE

## RETALIATION

99.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 98 with the same force and effect as if fully set out in specific detail herein below.

100.    There existed an employer-employee relationship between Plaintiffs and Defendants.

101.    Plaintiffs exercised their statutory rights under Title VII by complaining to Defendants and the EEOC about the sexual harassment and hostile work environment created by Johnson and, thereafter, were subjected to intentional retaliation by Defendants, specifically Defendant, Johnson.  Plaintiffs'

35

terms and conditions of employment were altered, they were harassed and
threatened. Three of the Plaintiffs were forced to resign and one Plaintiff has been
forced to take FMLA leave to cope with the ongoing retaliation.

102. The Defendants' conduct proximately caused the Plaintiffs to suffer
embarrassment, humiliation, loss of reputation, emotional distress, trauma, and
mental anguish for which they claim damages as set out below.

103. Plaintiffs seek declaratory and injunctive relief, reinstatement where
applicable, award of compensatory and punitive damages, mental anguish, costs,
attorney's fees, and any and all such other relief the trier of fact may assess.

## COUNT FOUR

### NEGLIGENT AND WANTON HIRING, TRAINING, SUPERVISION AND RETENTION

104. Plaintiffs realleges and incorporates by reference paragraphs 1
through 103 with the same force and effect as if fully set out in specific detail
herein below.

105. This is a claim arising under the laws of the State of Alabama to
redress the negligent and wanton hiring, training, supervision and retention of
Defendant, Dr. Kevin Johnson by Defendants.

36

106. Defendants had a duty to provide the Plaintiffs with a reasonably safe work environment and to follow its own policies and procedures prohibiting sexual harassment, discrimination and retaliation in the workplace. Further, Defendants had a duty to follow the law.

107. In the early part of 2010, Plaintiffs, along with many other employees interviewed by corporate, complained about Dr. Johnson's physical assault and battery, and sexual harassment, gender discrimination and retaliation to the Human Resource department. Even though all acts were witnessed by other employees, Dr. Greg Windham, CEO, announced that all accusations came down to "he said, she said" and that nothing had been proven against Dr. Johnson.

108. As a result of Dr. Windham's findings, no disciplinary action was recommended nor taken by the corporate office against Dr. Johnson. Dr. Windham also announced that the issue would never be revisited and had no bearing on current charges against Dr. Johnson. This was again stated by Dr. Windham in a meeting in late January 2011, along with Tom Gill, Lori Bates, Connie Crook, Lackey, Beverly, Walker and Anderson.

109. This finding empowered Dr. Johnson to become even more emboldened in his harassment and Dr. Johnson bragged that even though one female employee "took notes" about his behavior, that "it didn't do her a damn bit

of good." Dr. Johnson further stated that it would do no good for any of the women to complain about him, that the company would protect him. Dr. Johnson also has made the threat that he owned the facility and that if anyone challenged him, they would "live to regret it." Dr. Johnson further threatened that he was untouchable and the doctors would have his back and that nothing could be done to stop him.

110. In January 2011, additional charges of sexual harassment were reported to Tom Gill, Vice President of Operations, and again to Dr. Greg Windham, CEO, along with Lori Bates, Facility Administrator, Connie Crook, Director of Nursing, and Lynn Hammick of the Human Resources department. Another investigation was made by the corporate office and conducted by Ms. Lynn Hammack. Dr. Johnson was never held accountable for any acts of sexual harassment, assault and battery, gender discrimination or retaliation. Rather, the company sanctioned and condoned Johnson's perverted and illegal conduct.

111. As such, Plaintiffs continual reports and complaints to management regarding the sexual harassment of Johnson were ignored and nothing was done to curtail the behavior of Johnson or protect the female employees from Johnson. The harassment and retaliation continued despite Johnson knowing such actions were illegal.

38

112.   Defendants failed to establish an adequate policy against sexual harassment, failed to implement such policy consistently, failed to regularly and clearly communicate  policy to its agents and employees, and failed to train and enforce its own policies to the detriment of the Plaintiffs and other female employees.

113.   Defendants failed to educate and train Johnson and other managers, owners, supervisors, and employees on sexual harassment.

114.   As an approximate result of the Defendants' conduct, Plaintiffs were caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which they claim damages as set out below.

115.   Plaintiffs seek declaratory and injunctive relief, reinstatement where applicable, award of compensatory and punitive damages, mental anguish, costs, attorney's fees, and any and all such other relief the trier of fact may assess.

## COUNT FIVE

## INVASION OF PRIVACY

116.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 115 with the same force and effect as if fully set out in specific detail herein below.

39

117.   This is a claim against all Defendants, including Johnson, in his personal and individual capacity, for the invasion of Plaintiffs' right to privacy based on the laws of the State of Alabama.

118.   Defendants invaded the Plaintiffs' personal and emotional sanctum by physically touching, assaulting and battering the Plaintiffs repeatedly after being told to stop.  Further, Plaintiffs were placed in a false and negative position, have publicity provided by Defendant to private information about the Plaintiffs and the Defendant has intruded into Plaintiffs' physical solitude and seclusion by having to defend against false accusations.

119.   Dr. Johnson regularly refers to women using slang words and degrading names; he has viewed, distributed and watched pornography in the work place; he openly shows vulgar and inappropriate pictures of his ex-girlfriends and a female patient having surgery.  The female patient was co-Plaintiff, Walker, and in some of these photos Walker was naked and appeared to be sedated.  Dr. Johnson has drawn vulgar pictures on the PACU calendar at female employees' desks and has written sexually graphic comments, for example, "sex word of the week."

120.   Dr. Johnson makes degrading, sexually charged and demeaning comments and jokes.  Plaintiffs have witnessed him grabbing and touching

40

employees in a sexual manner. Plaintiffs were made to feel terrorized in the work

place by Johnson, who continually harassed, intimidated and threatened them and

other female employees.

121.    Defendant Johnson has physically assaulted Anderson by choking

her, pulling her hair, pushing her and threatening her in the workplace. Johnson

has physically assaulted Beverly by touching her, hugging her, physically

grabbing her, pulling her body into his body and grabbing her buttocks while

making sexual comments. Johnson has physically assaulted Lackey by touching

her, hugging her, physically grabbing her and pulling her body into his body while

making sexual comments. Further, Johnson has physically assaulted Walker by

touching her, hugging her, physically grabbing her, pulling her body into his body

and grabbing her buttocks while making sexual comments. These actions were

degrading and abusive. At all times, Plaintiffs repeatedly told Johnson to leave

them alone, but to no avail.

122.    The Defendants' conduct invaded the privacy of each Plaintiff and

proximately caused the Plaintiffs to suffer embarrassment, humiliation, loss of

reputation, emotional distress, trauma, and mental anguish for which they claim

damages as set out below.

41

123. Plaintiffs seek declaratory and injunctive relief, reinstatement where applicable, award of compensatory and punitive damages, mental anguish, costs, attorney's fees, and any and all such other relief the trier of fact may assess.

## COUNT SIX

## ASSAULT AND BATTERY

124. Plaintiffs reallege and incorporate by reference paragraphs 1 through 123 with the same force and effect as if fully set out in specific detail herein below.

125. This is a claim against all Defendants, including Johnson, in his personal capacity arising under the laws of the State of Alabama for assault and battery.

126. Defendants did commit assault and battery of the Plaintiffs by touching the Plaintiffs' person in a rude and hostile manner and speaking to them in a sexually suggestive and demeaning manner which was unwelcomed by the Plaintiffs, making them feel uncomfortable as well as personally assaulted.

127. This conduct was committed while Johnson was acting within the line and scope of his authority as the Plaintiffs' direct manager and while acting as an agent, employee and part-owner.

42

128.   Dr. Johnson makes degrading, sexually charged and demeaning comments and jokes.  Plaintiffs have witnessed him grabbing and touching employees in a sexual manner.  Plaintiffs were made to feel terrorized in the work place by Johnson, who continually harassed, intimidated and threatened them and other female employees.

129.   Defendant Johnson has physically assaulted Anderson by choking her, pulling her hair, pushing her and threatening her in the workplace.  Johnson has physically assaulted Beverly by touching her, hugging her, physically grabbing her, pulling her body into his body and grabbing her buttocks while making sexual comments.  Johnson has physically assaulted Lackey by touching her, hugging her, physically grabbing her, pulling her body into his body while making sexual comments.  Further, Johnson has physically assaulted Walker by touching her, hugging her, physically grabbing her, pulling her body into his body and grabbing her buttocks while making sexual comments.  These actions were degrading and abusive.  At all times, Plaintiffs repeatedly told Johnson to leave them alone, but to no avail.  At all times, Johnson's actions were intentional.

130.   Defendants had notice of Johnson's improper touching, assault, battery and sexual harassment of Plaintiffs and failed to take any proper

disciplinary or corrective action.  Defendant condoned and ratified the assault and battery of Plaintiffs.

131.   The Defendants' conduct proximately caused the Plaintiffs to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which they claim damages as set out below.

132.   Plaintiffs seek declaratory and injunctive relief, reinstatement where applicable, award of compensatory and punitive damages, mental anguish, costs, attorney's fees, and any and all such other relief the trier of fact may assess.

**COUNT SEVEN**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

133.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 132 with the same force and effect as if fully set out in specific detail herein below.

134.   This is a claim against all Defendants, including Johnson, in his individual and personal capacity, arising under the laws of the State of Alabama prohibiting the intentional infliction of emotional distress.

135.   The improper touching, egregious sexual harassment and crude comments and conduct of the Defendants, as aforesaid, was extreme, outrageous and beyond the bounds of decency.

44

136.   Such conduct is not condoned by society and should not go unpunished.

137.   The conduct of Defendant and Johnson, as aforesaid, created a hostile work environment that was unwelcomed by the Plaintiffs.

138.   The repeated sexual harassment, comments, assault and battery by Johnson and the subsequent ratification by Defendants, extremely altered the Plaintiffs' work environment and no person should be expected to work in that type of environment in the State of Alabama or the United States of America.

139.   The Defendants' conduct proximately caused the Plaintiffs to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which they claim damages as set out below.

140.   Plaintiffs seek declaratory and injunctive relief, reinstatement where applicable, award of compensatory and punitive damages, mental anguish, costs, attorney's fees, and any and all such other relief the trier of fact may assess.

**WHEREFORE**, the Plaintiffs respectfully request this Court:

A.     Permanently enjoin Defendants Surgery Center of Cullman, Inc., Surgery Center of Cullman, LLC, Surgical Care Affiliates, LLC and Kevin Johnson, M.D. from engaging further in their discriminatory treatment of female employees similarly situated;

45

B.     Order Surgery Center of Cullman, Inc., Surgery Center of Cullman, LLC, Surgical Care Affiliates, LLC, their agents, owners and employees to institute and carry out policies, practices and programs which provide equal employment opportunities for women and which eradicates the effects of its past and present unlawful employment practices, including implementing a consistent policy against sexual harassment and retaliation in the work place;

C.     Order Kevin Johnson, M.D. to engage in a comprehensive mental examination and counseling to prevent further sexual harassment and assault in any workplace where Johnson may work with females in the future.

D.     Order Surgery Center of Cullman, Inc., Surgery Center of Cullman, LLC, Surgical Care Affiliates, LLC, their agents, owners and employees to make whole Plaintiffs by reinstating Plaintiffs where applicable, providing appropriate front pay, back pay with prejudgment interest, and other monetary relief as may be available to them, including damages for their physical, mental and emotional distress, embarrassment, humiliation and trauma;

E.     Award Plaintiffs liquidated damages, and compensatory and punitive damages under the laws of the State of Alabama and the Constitution of the United States;

46

F.    Award Plaintiffs their costs and expenses herein, including

reasonable attorney's fees; and

G.    Award such other and further additional relief which this Court deems

necessary, proper and appropriate under the circumstances.

### PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

Respectfully submitted,

Alicia K. Haynes ASB-8237-E28A
Attorney for Plaintiff

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama 35226
Phone: (205) 879-0377
Fax: (205) 879-3572
Email: akhaynes@haynes-haynes.com

47

## PLEASE SERVE THE FOLLOWING DEFENDANTS
## BY CERTIFIED MAIL:

### VIA CERTIFIED MAIL:

Surgery Center of Cullman, Inc.
c/o C. T. Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

Surgery Center of Cullman, LLC
c/o C. T. Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

Surgical Care Affiliates, LLC
c/o C. .T. Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

## PLEASE SERVE THE FOLLOWING DEFENDANT
## VIA PROCESS SERVER:

### VIA PROCESS SERVER:

Kevin Johnson, M.D.
c/o Surgery Center of Cullman, Inc.
1403 Wall Street
Cullman, Alabama 35055

## PLAINTIFFS' ADDRESS:

Dana Michelle Anderson
c/o Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, Alabama 35226

Belinda Beverly
c/o Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, Alabama 35226

Kathy Lackey
c/o Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, Alabama 35226

Kari Walker
c/o Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, Alabama 35226